Good morning. May it please the Court, Stuart Raphael for Murphy-Brown, LLC. Before explaining why the gag order entered in this case is unconstitutional, I want to first address the question of whether the mandamus action is moot in light of the District Court's decision about three weeks ago to vacate the gag order under review here. As we indicated in our opposition to the motion to dismiss on mootness grounds, the case is not moot for three independent reasons. I think the easiest one to decide is the voluntary cessation doctrine where challenged conduct... If we do it on that basis, we don't need to get into capable of repetition in evading review, do we? That's exactly right. And I think the reason that the plaintiffs like the capable of repetition exception is that the burden would be on us. Your view is that the voluntary cessation argument is the most straightforward? It is the most straightforward. And you also wouldn't need to address the jurisdictional question of whether the District Court can sort of, you know, strip this court of jurisdiction by vacating an order. Well, wouldn't we have to address jurisdiction? I mean, every court has to address its jurisdiction. Well, if the voluntary cessation doctrine applies, then the case is not moot. So we offer three independent reasons why the case is not moot. Voluntary cessation is one. We think it qualifies under capable of repetition as well. Where has voluntary cessation been applied to as opposed to a party, to a court? Here the District Court acted sua sponte. It wasn't the action of a particular party. I normally think of voluntary cessation as the acts of a party going forward, not the independent acts of a court. Well, I think there are two answers to that, Judge Agee. One is that these doctrines apply irrespective of the nature of the defendant under the voluntary cessation doctrine. Most of this Court's cases applying that doctrine involve governmental bodies that stop applying the law under challenge. There is a case where it's not cited in the briefs, but there's a case in the Ninth Circuit where the court in a mandamus case applied the voluntary cessation doctrine. All right, so what case is that? Have you notified counsel of that case? I have not. I'm responding to the Court's question, so I have not notified counsel. It's NRA United States, 791 F3rd 945, decision by the Ninth Circuit from 2015. It involved a District Court refusal to grant pro hoc vicee admission to United States attorneys or members of the Department of Justice appearing who weren't admitted in Nevada. And when the mandamus was under review in the Ninth Circuit, the District Court vacated the prior orders and allowed the pro hoc admissions. The Ninth Circuit in that case said the case wasn't moot because it was under the voluntary cessation doctrine. Moreover, the court said it didn't need to enter an order vacating the orders of the District Court. It could simply say what the rules are going forward so that the District Court had that guidance. Didn't the plaintiffs file a motion to vacate the gag order? The plaintiffs after... And you filed a cross motion to stay the gag order. Mostly correct. The plaintiffs filed a motion to narrow the gag order. Their initial position was they wanted a gag order. The District Judge's decision order says the plaintiffs filed a motion to clarify, modify, or vacate in part. It was vacated in part. They wanted to keep a gag order in place. Once the plaintiffs took the position, as we read their papers, that the gag order was overbroad, we thought that made it clear it was unconstitutional, and we filed a cross motion to stay the gag order. But on the jurisdictional question, I think that the issue presented there is, can a District Court strip this court of jurisdiction after it's granted a motion to expedite review and set the case for argument? And this court said, in In Re Charlotte Observer, that mandamus is the preferred mechanism to review decisions of a District Court that restrict First Amendment freedoms of trial participants. And that was a case where you had both a collateral order appeal and mandamus, and you chose to decide it based on the mandamus rule. So it would be incongruous. Is this case covered by our precedent in Lewis? Yes, it is. Because it seems to me that this is a more concerning example than was present in Lewis precedent, because in Lewis, the District Court sought to assert jurisdiction shortly after the notice of the appeal was filed. But here, the District Court sought to assert jurisdiction after briefing, and just a few weeks before oral argument. So it sought to assert jurisdiction when the court of appeals would put a great deal more effort into the case. That's exactly right. I mean, just looking at it from the standpoint of our precedent, if the assertion of jurisdiction in Lewis was null and void, it would stand to reason simply as a matter of precedent. Do you see any basis for distinguishing our precedent? I don't. And as we pointed out, one difference was that case was a direct appeal on an injunction, and this is mandamus. But since you said in Charlotte Observer that mandamus is the preferred route, even when you have an interlocutory appeal that you could have used as an alternative vehicle, it would seem incongruous that you would let a District Court pull a rug out in one instance and not the other. I think that the Ninth Circuit specifically ruled that it's not a jurisdictional issue in mandamus. In the case I mentioned? The Ninth Circuit didn't address this aspect of the case. I don't know that it was raised as a problem with what the District Court did, but it did decide it based on the voluntary cessation doctrine. Not in that case, but there's another Ninth District case I've got somewhere where they specifically ruled that in mandamus the District Court did have jurisdiction. Fifth Circuit did the same thing. There's a Ninth Circuit case that's unpublished which involved a gag order that was dismissed. I'm not sure if that's the one the Court's referring to. And when the District Court dismissed the gag order, the mandamus petition was dismissed. But I don't believe there was an opinion addressing the jurisdictional question. But it really doesn't matter. Do we have to see this in jurisdictional terms? No. No, because you can decide it. I think there's a practical issue. If the Court didn't have jurisdiction to enter the August 31 order, then the remedy here would be to vacate the August 31 order and the gag order. But if you think the Court hadn't... What I'm looking at here, you know, whether... I'm not sure I need to speak in broad jurisdictional terms, but what troubles me here are the particular facts. This was in the District Court case very shortly before oral argument and then proceeded to rule on the very order and judgment that was before the Court of Appeals. It wasn't on some other... It wasn't on some other aspect of the case. It was the very order that was presented to us on appeal. And so you have the awkward situation where two courts, whatever court they advance, I don't know, opine in working on the very same order. That's exactly right. And that's the greatest principle. But it's not... I don't know that it's necessarily jurisdictional in terms. It's just that what happened here was so unfortunate. You have a gag order with so many affirmatives and you have an appeal taken, briefs filed, Court of Appeals worked on the case, we worked on the cases a good bit before oral argument, all of a sudden the District Court is ruling on the very order. It's on appeal. And we're not even sure whether there's going to be a narrowing or whether the plaintiffs, what they're going to do in the future. That order just hangs over the whole case. That's exactly right. It's very similar to what happened in Dover v. Public Citizen where the District Court acted during the briefing schedule. But here, as you point out, Judge Wilkinson, the District Court acted after all of the briefs were in and after the Court had granted expedited review. It doesn't necessarily speak in jurisdictional terms. It just speaks what happened here wasn't right. Yes, Your Honor. And I think you could decide it simply as a prudential matter. But I think the plaintiff's position, I believe, is that whenever the District Court vacates the order, this Court loses jurisdiction if the case becomes moved. And that would transfer the power over the docket from this Court to the District Court. So I agree that there are other routes, as you mentioned in your papers. But there is a decision en banc from the Ninth Circuit in Ray Ellis and the Fifth Circuit, Woodson v. Surgentech, that both specifically deal with jurisdiction in a mandamus setting that distinguishes mandamus from notice of appeal in that sort of setting. So I think both of those cases are contrary to what your position is on jurisdiction. If I'm recalling those cases correctly, the fact that there's a mandamus petition pending does not mean that the District Court loses jurisdiction over everything. I don't believe those cases address the issue here where, as Judge Wilkinson pointed out, the District Court purports to vacate the exact order that's being reviewed by the Court of Appeals under its mandamus power. So I don't think those cases say that. And I would like to address the infirmities in the order. You're talking about mandamus not as a general matter but as a specific matter to rectify what is an abridgment of First Amendment rights. It's not no one disputes a general proposition that mandamus is an extraordinary remedy. But this is a very different kind of situation, for example, than when we get a mandamus petition asking us to mandamus the District Court to take a particular action because the case is laying around too long. And then the District Court, while the mandamus petition is under advisement or under submission by the Court of Appeals, acts on the order and it moves it. But that's a totally different kind of situation. And we don't issue mandamus carelessly in a great many situations. It's just here the facts are particularly bad. That's correct. And you have flexibility under the All Writs Act. You don't actually need to vacate an order below in exercising your mandamus power. You could do what you did in Charlotte Observer and say we agree with the petitioners that what the District Court did here was wrong and we want to provide guidance so it doesn't happen again. And we expect the District Court to abide by it. So you have great flexibility in how you fashion the relief here. But what happened here was wrong because the District Court treated this gag order as a matter of first resort and not last resort, which is what the rules require. And if I could turn to those infirmities. You could also reach that under the paperwork repetition for evading review like the Supreme Court did in the Nebraska press case and our court did in the Baltimore Sun case. That's right. The burden is a little higher on us if it's capable of under the capable of repetition box, under the voluntary cessation box, the burden is on them to show it's absolutely certain that the issue won't occur. But you would go with either one as long as you prevail. Absolutely. Absolutely. With regard to the infirmities in the order, as Your Honor pointed out, there are many. The decision of the Supreme Court in Nebraska press lays out that three-prong test that you have to look at to determine if a gag order is appropriate. The first prong is what is the nature and extent of the publicity that warrants the gag order? And as the court made clear in the Nebraska press and also in Skilling, having widespread publicity is not the issue. The publicity has to be such that it involves unforgettable information. Well, part of the problem is that the order starts off talking about the Sixth Amendment. That's correct. It's a civil case, for Pete's sake. You're exactly right. But as Skilling says... So are you opposed to any order restricting comments on the case? I mean, what about... Well, sir, there is a background rule under the North Carolina professional rules that prohibits counsel from saying... What about your client, though? Can it run TV ads? Can it spend a million dollars? It hasn't done that, but it could. And we're not here to say that a district court could never, ever issue a gag order in a civil case. There might be an extreme case where it's justified. What would you say? We don't want any gag order of any type? Or is this just to rely on the North Carolina bar rules? I think that's right. I mean, the presumption is that gag orders as prior restraints are presumptively unconstitutional. So really, the burden is on the party seeking one to show why it's needed. And I think that the plan... Judge Jones suggests there are rules of professional responsibility... That's correct. ...that direct what attorneys say about certain cases and what they don't say. This goes far beyond just attorneys. It talks about potential witnesses who are not subject to any bar rules. We even know who the potential witnesses are. Yes, and just a couple quick points before my opening time runs out. First, I think the plaintiffs are in an awkward position here now that they're saying that they don't plan to seek a new gag order. I think that shows that a gag order is unnecessary. Second, the alternative... The real problem here is that you've got this gag order and you have no record. Yes. You have no basis by which to judge the gag order. Well, you have it. What record you do have shows that the gag order was entirely unjustified because you actually had three trials that went forward. It would show that jury voir dire was perfectly adequate to address the issues of exposure to pretrial publicity. You have the gag order. It has no finding of facts. There was no hearing. There was no notice. I don't see how any appellate court could conduct a review of the gag order when all you've got is the gag. We agree with that. On top of that, you've got the issues of the order having phrases that have been deemed unconstitutional by the U.S. Supreme Court and by this court. So we think this would be an excellent vehicle for the court to write on this topic to explain that a gag order must be a measure of last resort, particularly in a civil case. Thank you. But to follow up on the point that Judge Jones made, it's not necessary in this case to say that every restriction of attorney's speech or whatever is necessarily unconstitutional. That's correct. I mean, you know, sufficient unto the day. That's correct. We couldn't find a gag order in a civil case that looked anything like this. This order would have lasted for years, and it prohibits the parties from saying anything about the case. I got a phone call from a legal reporter the day before the judge tried to vacate the order asking me about the appellate issues here, and I said, I can't even talk to you about the appellate issues, and that just can't be right. You cannot have a restriction on speech that is that broad as a measure of first resort. Thank you. Thank you. All right, Mr. Hughes, I'm happy to hear from you. Yes, Your Honor. I'd like to give Your Honor some context on what happened with the district court. During the first trial, at the end of the first trial, there was a plaintiff's verdict. There was then a press release from the defendant that talked about interminable evidence. There was then blog postings by a group called NC Farm Families, another group called the Pork Council. There was an article about this being an attack on farmers. Our federal cases are not against the farmers. Our lawyers started to get threats. We had email threats. Our Facebook page was overrun. We had to take it down. The defendant moved for a mistrial in the second. All that may be correct, but that's not cited anywhere in the district court's order, and there's no record of that as being the basis for the district court's order. That's true that it's not in the district court's order, but we believe the appropriate remedy for that is to give the district court a chance to consider that. Does there need to be findings? And doesn't a gag order need to be specifically tailored to findings? Yes and no, Your Honor. In the N. Ray Russell case specifically, the party challenging the gag order said that there were not adequate findings in the district court, and this court said that rejected that challenge. But there are no findings here at all. That's correct, Your Honor. So is your position that you don't support this gag order as written either? We believe that the gag order can be supported constitutionally. However, honestly, when the gag order came in and then the defendant filed this petition, we went back and looked at it and thought, if the district court had asked us to brief out what a gag order should look like, what would we ask for? And we came up with what we would ask for, and we did two things. We put that in our response brief before this court. We also put that in a motion to the district court in which they asked the court to clarify its order. And I want to clear that up and address Judge Wilkinson's concerns. Well, that's after the fact. What we have is this gag order. Yes, Your Honor. Whatever happened in the district court, whatever you all filed or the other side filed after that, I don't see how that's relevant to our decision on the gag order. Those are just extra pleadings in the district court after the order on issue and appeal was entered. They're not part of our record that we look at for this order. That's correct, Your Honor. However, I believe that those filings are in aid of this proceeding in the sense that you have options on what to do. See, my college question, Your Honor, would make a very good point. Your position on this has always been something of a moving target. I don't know what you want. I have no idea. The only thing I know is that this order is like nothing I've ever seen. I've never seen something entered without filing. Something that restrains comments from not only counsel, not only parties, but witnesses and potential witnesses. It's vague. It's overbroad. It lets nobody in connection with this trial understand even remotely where they stand. It's a prior restraint on any kind of speech. It confuses criminal and civil actions. It takes no account of tailoring a remedy to a particular finding of a violation, which is absolutely central to law. There's no exploration of less restrictive means with respect to curtailing speech or whether they would be effective or ineffective. I mean, if all of the different First Amendment infirmities that one could list, you would find them in this order. Each and every one of them. What are the things that are most inimical to First Amendment freedoms? This order was more restrictive in a civil case than orders that had been issued in the highest profile criminal prosecutions. And it was issued without any basis. And, you know, it just can't be that we're going to be playing some going and coming kind of thing and not clear this up, that this is wrong. Yes, Your Honor. You left out notice of an opportunity to be heard. Yes, Your Honor. I would note a few things. I would note that the prior decisions of this Court on gag orders have used a different standard for participant gag orders versus orders that restrict the press or that close the courtroom proceedings. In In re Russell, this Court said that the standard for a participant gag order was reasonable likelihood that the extrajudicial statements would prejudice the proceedings. That standard, or a substantial likelihood standard, is the standard in the Second Circuit, Third Circuit, Fifth Circuit, and the Tenth Circuit. It is different from the stricter standard that you find when a judge closes the courtroom or seals the record. So I would draw that distinction. Getting back to my other question, are you going to ask for any kind of gag order? Your opposing counsel said that your side has given up that idea. Is that right? I think it's very unlikely that there will be another need for a gag order in the case. The September 18th deadline to file a motion for one came and went. We did not file a motion for one. And, again, the situation in the courtroom felt like an emergency. You didn't file a motion for this order, did you? We did not, Your Honor. But the district court did it on its own. It acted solely sua sponte. It was sua sponte. But I would note that in the order, the first case that the district court It wouldn't keep the district court from doing it again. The district court judge had 38 years' experience, and now with all this briefing that's here and with the fact that his honor in the August 31st order stated, if you want a gag order in the future, file a motion, file a response, I think his honor has gotten the message. Well, one thing is it puts these folks in a very difficult situation. The fact that this gag order is an issue and it's uncorrected, there are many, many different trials going on down there, many different cases, and it's going to hang over a whole set of cases, and it's going to implicitly be in the background of all these cases that if you say something or do something that offends the district court or there's some version or portion of the gag order, it's going to be slapped down. These people are saying they can't even respond to attacks upon them. Now, maybe the attacks are justified and maybe they're not, but they can't even come to a professional convention and make a comment without running afoul of the order. And there's no question that the pork industry in eastern North Carolina, a lot of them are not the most popular of folks, and they're under attack. But the fact that there are tensions between neighbors and residents and pork farmers, that doesn't mean they can't defend themselves. They have a right, like every American does, to debate the issues around a case subject to rules of professional responsibility and reasonable restraint. That's true, Your Honor, and we're fans of the First Amendment. The thing that we would note is that in many of the gag order cases, the way it gets to the Fourth Circuit or another circuit court is that first there's a motion, there's briefs, there's a hearing, then there's an order. Or if it's sua sponte, somebody intervenes or asks to reconsider and gives the court the benefit of extensive briefing and the court can decide. That didn't happen here. Instead, there was this immediate petition. And I understand Your Honor's concern about two courts exercising jurisdiction. What I would note is that this court has not yet granted the petition for writ of mandamus. When the court entered the order expediting briefing, we hadn't even been heard. And the facts that we had in our brief that we believe gave the district court a basis, albeit not in its original order, weren't even before this court. Does that sort of underline the problem in this case? If there's going to be a gag order at any point, you have to make a record in the district court. You can't make a record in the Court of Appeals. Yes, Your Honor. What we have here is there is no record in the district court, and the parties have attempted to make some sort of a record in the Court of Appeals. You can't do that. I understand. But you can ask the district court to see your concerns and to clarify it, and that wasn't done. And we feel like under the circumstances, especially when the mandamus standard asks that there's no adequate alternative, that to just assume that Judge Britt was embedded in his position and wouldn't listen to the parties on it, I don't think that's correct. I don't think it gives the judge respect. I'd note a couple of other things. I believe this court does have jurisdiction. It's for this court to decide whether the controversy is moot or not. If this court is going to exercise capable of repetition or voluntary cessation, I believe capable of repetition is the way to go. Let me say why. Voluntary cessation. I'm not sure we even need to get into the capable of repetition. I mean, we could. But you don't have to because it's your discretion as to whether to find it moot. Yes, Your Honor. And as Your Honor pointed out, in this situation, we looked really hard at what the case law was before we filed our motion to the district court to clarify. And what we found was that, yes, Your Honor. What I'm concerned about is you have an appeal. The briefs have been filed in the appeal. District court, which may or may not have happened here, I don't know, but district court looks at the briefs that have been filed on appeal and says, whoa, I'm in trouble on this one. And I think I may be headed for a reversal. And so the district court takes jurisdiction right out from under the appeal, two weeks before the appeal is going to be heard, and then it becomes a race of sorts, I guess, as to who's going to rule on the very same order first. I mean, it just plays havoc with our schedule and with the efficient use of judicial resources. And when you add to this all of the infirmities on the merits, it's just something that should, what happened here just shouldn't be repeated. There are things that are wrong procedurally about it, and there's a whole barrel full of things that are wrong substantively about it. It just, it hangs, the train ran off the track. Not just off the track, but into the adjoining meadow. Something went very badly awry. Yes, Your Honor. In the Ninth Circuit, the Boleyn case, I would point out, that was cited in our brief. There was information released in the press that was supposed to be under seal. It was published. District court entered an order preventing further publication. A petition for mandamus was filed. Before the petition was heard, the district court vacated that order. The Ninth Circuit then issued an order, cited in our brief, in which they say, the petitioner having notified us that the district court has vacated its July order, the petition for writ of mandamus is dismissed as moot. And when Your Honor refers to an appeal, respectfully, we don't believe this is an appeal. This is a petition for mandamus. They're separate rules that govern it. What difference does it make to you, your side? You said you're not in favor of a gag order of any type. You don't think one's necessary. And so, why are you concerned about this court getting into the substance of the matter as your opposing counsel, which you speak on the things that went on here? Yes, Your Honor. Our concern, frankly, is that we are concerned about how this case was immediately brought here without giving Judge Britt any opportunity to relook at his order. And then filings were made here that didn't discuss half of the facts or half of the reason why he entered his order. I understand he didn't put it in his findings, and that's a defect. However, facts still went out before this court. The court then expedites briefing. I remember it because I was trying to write a response brief while I was also trying to brief the third trial that was coming underway. This court entered the brief setting expedited briefing. I then emailed the other side and said, we would like to limit the scope of the order. We think it only applies to the five cases. We think the potential witness should be defined as this court defined potential witness in In re Russell, and we think the time duration should end with each trial. We think it should be limited, vacated in part. The other side said, no, all it will do for us is vacating in full. And what's concerning to me is they wanted this fight to come here, and I think it's a little bit disingenuous. For example, if they had agreed with us to ask the district court to define potential witness narrowly, like we suggested, guess what? Every grower out there could talk because if potential witness was just people understanding or testifying, 99% of the universe of potential witnesses immediately can speak. So the irony here is that if the defendant really wanted to protect the First Amendment and to protect the right of speech, there were interim measures. This is an injunction, and the court can limit it or suspend it in whole or in part. Can I answer the question that I thought Judge Jones asked? Yes, Your Honor. If the gag order is vacated by this court, whatever rationales are used, and you go back to the district court, if there's ever a reason for a gag order, you start over from scratch. How is your client disadvantaged? I don't think we are. If this court were to vacate it, I don't think that would disadvantage us. Judge Agee makes a good point. Rather than working from an interim order or narrowing an order that has so many deficiencies, the best thing to do is just clean the board and give everybody a chance to start fresh with the fact that there are some things that just should not be repeated. But the idea of narrowing the order in a hearing indicates that there's some legitimacy to what happened here in the first place, and there's not. But on the other hand, if you start afresh and if a situation arises where you have a discreet ill and you can go through the different ways that might be used to address it, but it's just better sometimes to start from square one. Yes, Your Honor. And we believe that can be done now because we have this pause. The next trial, the fourth trial, is not until November, as the court noted in its August 31st order. But I do want to emphasize that the situation on the ground during the second trial felt like the integrity of the court process was being threatened by extrajudicial publicity. Why don't you tell us what do you want this court to do with this case? I would like the court to give any guidance that it sees fit. However, I would note that the standard that they ask for of findings of fact, opportunity to be heard, very high standard, that's not actually the standard that this court's used for participant gag orders. This court has used a different standard if it's the press or the court proceedings being closed. So I'd ask the court to look at that past precedent. I believe the narrowest holding this court could make would simply be to do what the Ninth Circuit did and dismiss the petition as moot. However, the court has expressed a concern that it needs to comment further. That would be very helpful to all of us if the court did. I don't think voluntary cessation is the exception to use. I just wanted to note that because Federal Rule of Propel Procedure 21 makes clear the district court is not the defendant. It's not adverse. It's an Article III court. And there is separation between our position as the plaintiffs and the district court's position. The Federal Rule makes clear that we're not here representing the district court. It's more like an adversary proceeding. Thank you, Your Honor. It sounds like we're in agreement with plaintiffs that the court, it would be helpful for the court to provide guidance for the next time this happens. We agree with that. I agree that if this ever comes up again, it needs to be from a fresh start. The district court should entertain a motion for a gag order, and then the parties can brief it. That's the way it should have worked. And that's what we had proposed, agreeing to come to this court and agree to vacate the gag order. It's just good for everybody to take a deep breath and start over. That's exactly right. And on the issue of did the district judge get the message by reading the briefs in the appeals here, in the case here, which we did file in the district court, respectfully, we don't think the judge did get that message. If you look at the August 31 order, the district court invited the parties to file for a new gag order and use the phrase similar order. And there's really no acknowledgment in that order whatsoever that there were any infirmities in the earlier order. The order does not prevent the plaintiffs from seeking a new gag order. I think they were, Judge Jones, when you asked me that question earlier, I think you may have, I may have not made it clear that the plaintiffs have said, have taken the position with us that they will seek a gag order if necessary. So this, even without a gag order in place, this thing has. We don't know what the circumstances are going to be. The next trial is, what, several months? In November. Oh, November. So, you know, there might be some extraordinary circumstances that change your mind. But I think they've said clearly now that as facts stand now, they're not interested in pressing a gag order. They said probably. It doesn't, they don't rule it out. And as the court pointed out, it doesn't prevent the district judge from issuing another one sua sponte. I doubt that would happen. Even without the gag order in place, this hangs over our client like a sword of Damocles because it has a chilling effect. Judge Wilkinson has pointed that out. Yes, it has a chilling effect because now they have to worry if we say something that may go too far, it may provoke the plaintiffs to seek a gag order. Maybe you forgot to tell them that a new order had been entered. It's going to pop right back up. With regard, I think it's important with regard to what's in the record. It's true there was no record compiled by the district court. But we did have, and we provided in the joint appendix, the voir dire in the three trials that went forward. And they showed that voir dire was absolutely adequate to identify the handful of jurors who had been exposed. Well, whether it is or it isn't, it certainly needs to be considered. Yes, it does. With regard to the In re Russell case, you had a ten-page decision by the district court there laying out why the court thought a gag order was appropriate. The test you apply to determine the order's validity is Nebraska, the Nebraska press test. Was the publicity so widespread and prejudicial that it threatened a fair trial? And I listened to the oral argument last week in the In re Wall Street Journal case, which was the case out of West Virginia, the Blankenship trial. The defendant wanted a gag order in that case to protect the defendant. The government took the position that it took no position. And the panel had a great question for the government at oral argument, which was you say that you can get a fair trial with or without a gag order, right? And the government said yes. And then the panel said, well, if that's the case, then it demonstrates that a gag order is unnecessary, doesn't it? And I think it does. And we have the same thing here with the plaintiffs now saying, and you're right, it's a moving target. Originally they wanted to keep the gag order, at least in a narrowed form. Now they're saying, at least for now, they're not going to seek one, which I think demonstrates that a gag order is unnecessary. This is a very unusual case, as Judge Wilkinson pointed out. This gag order is unprecedented. In a civil case, as Hirschkopf says, civil cases are different from criminal cases. And it's unprecedented. It's very unusual to have the Reporters Committee on Freedom of the Press and 11 other press organizations on the same side as industry groups. And I think what that shows is this broad recognition that what happened here is a real threat to the First Amendment. The court needs to issue an opinion that sets forth the principle that gag orders in civil cases must be orders of last resort and explain why the phrases that were used in this order are constitutionally infirm. And for these reasons, we would ask the court to grant our petition for an endemic and to make these rules clear. Thank you. We thank you, and we'll come down to the Council, and then we'll proceed directly into our next case.
judges: J. Harvie Wilkinson III, G. Steven Agee, James P. Jones